# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**ERIC VAUGHN HOWARD**                                                                                         **PLAINTIFF**

**V.**                              **NO. 4:20-cv-01452-KBG-ERE**

**COMMISSIONER OF THE**
**SOCIAL SECURITY ADMINISTRATION**                                                      **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.   Introduction:**

On June 2, 2019, Eric Vaughn Howard, who was born on December 1, 1973, filed a Title II application for disability and disability insurance benefits. (Tr. at 11).

In the application, he alleged disability beginning on July 29, 2015.[1] *Id*. In a decision dated September 14, 2020, an administrative law judge (ALJ) denied Mr. Howard's application. (Tr. at 21). On October 30, 2020, the Appeals Council denied his request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner. Mr. Howard has requested judicial review of the denial of benefits.

For the reasons stated below, the ALJ's decision should be reversed and the case remanded for further review.

## II.     **The Commissioner's Decision:**

At step one of the required five-step analysis, the ALJ found that Mr. Howard had not engaged in substantial gainful activity since the amended alleged onset date of January 18, 2019.[2]  (Tr. at 14). At step two, the ALJ determined that Mr. Howard has the following severe impairments: cervical spine fusion, asthma, degenerative disc disease, nerve damage at nerve root C5-C6, arthritis in shoulder, elbows, and

---

[1] At the hearing, Mr. Howard amended his onset date to January 18, 2019. (Tr. at 30).

[2] The ALJ followed the required five-step analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment (Listing); (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

2

wrists, bilateral carpal tunnel, restless leg syndrome, sleep apnea, and Peyronie's disease. *Id*.

After finding that Mr. Howard's impairments did not meet or equal a listed impairment (Tr. at 14), the ALJ determined that he had the residual functional capacity (RFC) to perform work at the sedentary exertional level, with exceptions: (1) he can no more than occasionally climb, stoop, crouch, kneel, or crawl; (2) he cannot reach overhead bilaterally; (3) he can no more than frequently reach and handle with the bilateral upper extremities; (4) he cannot perform constant repetitive movements; (5) he cannot be exposed to temperature extremes, heavy chemicals, dust, fumes, heights, or inside climate control; (6) he can have superficial contact with supervisors and co-workers, and only limited contact with the public, unrelated to the work performed. (Tr. at 16).

The ALJ next found that Mr. Howard was unable to perform any of his past relevant work. (Tr. at 19). At step five, the ALJ relied upon the testimony of a vocational expert (VE) to find that, considering Mr. Howard's age, education, work experience, and RFC, jobs existed in the national economy that Mr. Howard could perform, such as surveillance systems monitor and machine tender/label cutter. (Tr. at 20). Therefore, the ALJ found that Mr. Howard was not disabled. (Tr. at 21).

### III. Discussion:

#### A. Standard of Review

The Court's duty on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> [O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B. Mr. Howard's Arguments on Appeal

Mr. Howard contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. He argues that the ALJ: (1) impermissibly relied upon a "sit and squirm" evaluation at the hearing (relied on lay observations to discount Mr. Howard's complaints); and (2) failed to provide proper support for his Listings finding at step three. The Court finds support for Mr. Howard's second argument, with respect to his symptoms of chronic pain.[3]

Mr. Howard reported pain in his back, neck, and upper extremities that caused him to have problems sleeping. (Tr. at 17, 331). He took medication for his pain but it created problematic side effects. (Tr. at 378). In 2014, Mr. Howard underwent a multi-level fusion surgery in his neck. (Tr. at 374). A cervical MRI in May 2019 still showed multilevel degenerative face arthropathy with nerve impingement, despite surgery. (Tr. at 584). The cervical nerve damage was a theme in the medical records

---

[3] See *Noerper v. Saul*, 964 F.3d 738, 741 (8th Cir. 2020) ("Although our detailed discussion is targeted, we have considered the claimant's arguments and the record as a whole as to all of her impairments and their cumulative effect on her limitations.").

and required "aggressive pain management." (Tr. at 378). Two doctors restricted Mr. Howard from working starting in 2015, due to nerve damage. *Id*.

The ALJ recognized the nerve damage by listing "nerve damage at nerve root C5-C6" as a severe impairment at step two. (Tr. at 14). However, he contradicted himself at step three, where he said that Mr. Howard did not meet Listing 1.04 because "the records do not demonstrate compromise of the nerve root or spinal cord." (Tr. at 14). This one sentence was the extent of the ALJ's analysis of Listing 1.04. Mr. Howard asserts that this analysis was insufficient, contradicted by the record, and that he met his burden to show that his impairments met the criteria for Listing 1.04(A).

Listing 1.04(A), which was in effect at the time of the ALJ's decision, requires evidence of a disorder of the spine resulting in compromise of a nerve root or the spinal cord, characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss with muscle weakness and sensory or reflex loss, and if the lower spine is involved, positive straight-leg raise. 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 1.04A.[4] As Mr. Howard outlined in his brief, he experienced

---

[4] The Commissioner revised the musculoskeletal Listings effective April 2, 2021, after the date of the ALJ's decision in this case. 85 FR 78164, 20 CFR §§ 404, 416. But the Listings in effect at the time of the ALJ's decision in this case are controlling. *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 967 (8th Cir. 2003).

motor loss, limited range of motion, muscle weakness, decreased reflexes, radiating pain, widespread distribution of pain, and decreased strength. (Tr. at 331, 359, 360, 380, 372, 378, 466, 574, 579). A rehabilitation specialist doctor opined that Mr. Howard was totally disabled and unable to work in any capacity. (Tr. at 584).

Because the ALJ's Listing decision at step three is limited to one sentence and directly contradicts his step two finding of nerve root compromise, the finding lacks adequate support.

> It is paramount that an ALJ explain his Listings conclusion when the record contains evidence matching a Listing's criteria. "A lack of explanation why an impairment fails to equal medically a Listing impairment may frustrate meaningful judicial review when the record contains evidence of symptoms that might equal, in severity and duration, *some or all of the criteria* of a listed impairment." *Adams v. Saul*, No. 5:19-CV-00057-FL, 2020 U.S. Dist. LEXIS 38978, 2020 WL 1042144, at *8-9 (E.D.N.C. Jan. 30, 2020) (emphasis added). If the record overall supports an ALJ's Listings decision, the ALJ has not erred even if he fails to sufficiently explain his findings; on the other hand, in the event that there is evidence supporting a claimant's Listings claim, the ALJ must show his work. *See Phillip v. Saul*, 2020 U.S. Dist. LEXIS 124116 at *61-63 (D. Neb. July 15, 2020) (reversal required where ALJ's Step Three finding was perfunctory at best).

*Pearson v. SSA*, No. 4:20-cv-00298-DPM, *Doc. 20*, p. 5 (E.D. Ark. April 16, 2021). As Chief Judge Marshall noted in *Pearson*, "the Court would undoubtedly benefit from knowing what particulars informed the ALJ's [step three] conclusion." *Id*. at Doc. No. 23, p. 2. The ALJ's one sentence explanation lacks any record citation at

all. However, the record contains evidence suggesting that Mr. Howard may have met the Listing in question. The ALJ's cursory and "perfunctory" step three finding prevents the Court's from performing a meaningful review of the final decision. See *Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review); *Smajic v. Berryhill*, 2019 U.S. Dist. LEXIS 6240 *11-12 (W.D. Mo. Jan. 14, 2019) (an ALJ must give good reasons for his factual findings; he must "show his work"). For this reason, reversal is warranted.

### III.  Conclusion:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred at step three.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

Dated this 15th day of October, 2021.

_____
UNITED STATES MAGISTRATE JUDGE